Case No. 22-30585

---

## THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

KATHERINE MUSLOW; MEREDITH CUNNINGHAM,

Plaintiffs - Appellants

v.

LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND
MECHANICAL COLLEGE, BOARD OF SUPERVISORS; THOMAS
SKINNER, IN HIS INDIVIDUAL CAPACITY; LARRY HOLLIER; JOHN
HARMAN; CARLTON JONES, III, ALSO KNOWN AS TREY JONES,

Defendants – Appellees

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
THE HONORABLE BARRY W. ASHE, NO. 19-11793

**ORIGINAL BRIEF OF DEFENDANT-APPELLEE LARRY HOLLIER**

---

**Jeff Landry, Attorney General**

Craig R. Watson, #29473 (T.A.)
Guice A. Giambrone, III, #25062
Amanda M. Plaiscia, #35962
Blue Williams, L.L.C.
Special Assistant Attorneys General
3421 N. Causeway Blvd., Suite 900
Metairie, Louisiana 70002
Telephone: 504-831-4091
Fascimile: 504 849-3875
Email: cwatson@bluewilliams.com
Email: ggiambrone@bluewilliams.com
Email: aplaiscia@bluewilliams.com

Case No. 22-30585

THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

KATHERINE MUSLOW; MEREDITH CUNNINGHAM,

Plaintiffs - Appellants

v.

LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND
MECHANICAL COLLEGE, BOARD OF SUPERVISORS; THOMAS
SKINNER, IN HIS INDIVIDUAL CAPACITY; LARRY HOLLIER; JOHN
HARMAN; CARLTON JONES, III, ALSO KNOWN AS TREY JONES,

Defendants - Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
THE HONORABLE BARRY W. ASHE, NO. 19-11793

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Plaintiff-Appellant, Katherine Muslow;

2. Plaintiff-Appellant, Meredith Cunningham;

3. Defendant-Appellee, Louisiana State University and Agricultural and Mechanical College, Board of Supervisors ("LSU");

4. Defendant-Appellee, Thomas Skinner;

5. Defendant-Appellee, Larry Hollier;

6. Defendant-Appellee, John Harman;

7.  Defendant-Appellee, Carlton Jones, III, also known as Trey Jones

8.  Counsel for Plaintiffs-Appellants, Anne McGowan Johnson, Kelli Benham Bills, and the law firm Tillotson Johnson & Patton;

9.  Counsel for Plaintiffs-Appellants, Peter Koeppel and the law firm Koeppel LLC;

10. Former counsel for Plaintiffs-Appellants, Franz Zibilich, Kyle Schonekas and the law firm Schonekas, Evans, McGoey, & McEachin, LLC, Nelson S. Wagar, III and the law firm Wagar Hickman, LLC, Christopher Williams, Natasha Wilson, and David Gremillion;

11. Counsel for Defendant-Appellee Thomas Skinner, Dennis Phayer, Gregory Fahrenholt, and the law firm Burglass Tankersley Gaudin Phayer;

12. Counsel for Defendant-Appellee Larry Hollier, Craig R. Watson, Guice A. Giambrone, III, Amanda M. Plaiscia and the law firm Blue Williams, LLC;

13. Counsel for Defendant-Appellee John Harman, Darren Patin and the law firm Hailey McNamara et al.;

14. Counsel for Defendant-Appellees LSU and Carlton Jones, III, also known as Trey Jones, M. Nan Alessandra, Kim Boyle, and the law firm Phelps Dunbar, LLP;

15. Jeff Landry, Attorney General for the State of Louisiana.

*/s/ Amanda M. Plaiscia*_____
Amanda M. Plaiscia, #35962

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendant-Appellee, Larry Hollier, does not request oral argument in this matter. The facts and arguments that are before this Court are adequately presented in the briefs and the record and the decisional process would not be significantly aided by oral argument.

---

# TABLE OF CONTENTS

---

**Page References**

CERTIFICATE OF INTERESTED PERSONS ....................................................II

STATEMENT REGARDING ORAL ARGUMENT ........................................ IV

TABLE OF CONTENTS.....................................................................................V

TABLE OF AUTHORITIES ........................................................................... VII

STATEMENT OF JURISDICTION......................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .........................1

STATEMENT OF THE CASE...............................................................................1

SUMMARY OF THE ARGUMENT ...................................................................18

ARGUMENT .......................................................................................................20

      I. Standard of Review ...........................................................................20

      II. The district court properly dismissed Appellants' EPA retaliation claims against Hollier .........................................................................22

      III. The district court properly dismissed Appellants' Section 1983 claim for gender discrimination set forth against Hollier ....................27

      IV. The district court properly dismissed Appellants' gender discrimination claim asserted under the Equal Pay Act against Hollier..............................................................................................35

      V. Appellants request for reassignment if this matter is remanded should be denied..................................................................................45

CONCLUSION ................................................................47

CERTIFICATE OF SERVICE ..........................................49

CERTIFICATE OF COMPLIANCE..................................50

# TABLE OF AUTHORITIES

**Jurisprudence:**

*Alkhawaldeh v. Dow Chemical Co.*,
    851 F.3d 422, 430 (5th Cir. 2017) ................................................. 31

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 247-49 (1986) ................................................ 19, 21

*Boudreaux v. Stranco Field Servs., LLC*,
    2019 WL 2142045 (E.D. La. May 16, 2019).................................. 41

*Browning v. Sw. Rsch. Inst.*,
    288 F. App'x 170 (5th Cir. 2008)................................................ 41

*Cardoso-Gonzalez v. Anadarko Petroleum Corp.*,
    326 F. Supp. 3d 273 (E.D. La. 2018)................................................ 18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................ 20

*Copeland v. Wasserstein, Perella & Co.*,
    278 F.3d 472 (5th Cir. 2002) ...................................................... 21

*Davis v. Matagorda Cty.*,
    2019 WL 1015341, (S.D. Tex. Mar. 4, 2019)............................... 28

*Dutcher v. Ingalls Shipbuilding*,
    53 F.3d 723 (5th 1995)............................................................. 21

*Engstrom v. First Nat'l Bank of Eagle Lake*,
    47 F.3d 1459 (5th Cir. 1995) ...................................................... 20

*Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*,
    730 F.3d 450 (5th Cir. 2013) ...................................................... 23

*Lauderdale v. Texas Dep't of Crim. Just., Institutional Div.*,
   512 F.3d 157 (5th Cir. 2007) ......................................................... 28

*LeMaire v. Louisiana*,
   480 F.3d 383 (5th Cir.2007) ......................................................... 23

*Lindsley v. TRT Holdings, Inc.*,
   984 F.3d 460 (5th Cir. 2021) ......................................................... 23

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1995) .................................................... 19, 21

*Lyles v. Medtronic Sofamor Danek, USA, Inc.*,
   871 F.3d 305 (5th Cir. 2017) ......................................................... 22

*Martin v. Spring Break '83 Prods., L.L.C.*,
   688 F.3d 247 (5th Cir. 2012) ......................................................... 36

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...................................................................... 20

*Miles-Hickman v. David Powers Homes, Inc.*,
   589 F. Supp. 2d 849 (S.D. Tex. 2008) .......................................... 24

*Mills v. City of Bogalusa*,
   112 F. Supp. 3d 512 (5th Cir. 2015) ............................................ 24

*Monumental Task Comm., Inc. v. Foxx*,
   2016 WL 5780194 (E.D. La. Oct. 3, 2016) ................................... 28

*Phillips v. TXC Corp.*,
   194 F. App'x 221 (5th Cir. 2006) ................................................. 40

*Plemer v. Parsons–Gilbane*,
   713 F.2d 1127 (5th Cir.1983) ....................................................... 41

*Pulse Network, L.L.C. v. Visa, Inc.*,
   30 F.4th 480 (5th Cir. 2022) ......................................................... 45

*Reznick v. Associated Orthopedics & Sports Med., P.A.*,
    104 F. App'x 387 (5th Cir. 2004) ................................................................ 41

*Sanders v. Unum Life Ins. Co. of Am.*,
    553 F.3d 922 (5th Cir. 2008) ........................................................ 35

*Skotak v. Tenneco Resins, Inc.*,
    953 F.2d 909 (5th Cir. 1992) ........................................................ 22

*Stark v. Univ. of S. Mississippi*,
    8 F. Supp. 3d 825 (S.D. Miss. 2014) .......................................... 28

*Taita Chem. Co. v. Westlake Tyrene Corp.*,
    246 F.3d 377 (5th Cir. 2001) .................................................. 19, 21

*United States v. Ogle*,
    415 F.3d 382 (5th Cir. 2005) ........................................................ 35

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013) ...................................................................... 23

*Ware v. Sun Life Assur. Co. of Canada*,
    2009 WL 1011109 (W.D. La. Apr. 15, 2009) ............................ 21

*Wilder v. Stephen F. Austin State Univ.*,
    2021 WL 3288303, (E.D. Tex. Aug. 2, 2021) ............................ 23

## Statute:

29 U.S.C. §206(d)(1) .......................................................................... 41

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.    Whether the district court properly granted Hollier's Motion for Summary Judgment, dismissing Appellants' claim for retaliation under the Equal Pay Act.

II.   Whether the district court properly granted Hollier's Motion for Summary Judgment, dismissing Appellants' claim for gender discrimination under Section 1983.

III.  Whether the district court properly granted Hollier's Motion for Summary Judgment, dismissing Appellants' claim for discrimination under the Equal Pay Act.

IV.   Whether Appellants have established that reassignment is warranted if this Court reverses and remands this matter to the district court.

## STATEMENT OF THE CASE

Plaintiffs-Appellants Katherine Muslow and Meredith Cunningham brought claims of gender discrimination and retaliation against Larry Hollier, former Chancellor of Louisiana State University Health Sciences Center ("LSUHSC") (along with claims against the other Defendants-Appellees), which were dismissed by the district court with prejudice. The district court's Order and Reasons comprehensively addressed the myriad of claims against

1

each Defendant-Appellee in this matter and properly applied the law and evidence in making its determinations and granting summary judgment in the Defendants-Appellees' favor.

## Factual Background

The relevant factual allegations and evidence as presented by Hollier will be addressed below.[1]

### a. Appellants' Commencement of Employment

In approximately 2002, Muslow began serving as General Counsel for LSUHSC.[2] When she commenced her employment, Hollier was not serving as Chancellor of LSUHSC and, as such, did not set her initial salary.[3] As of December 1, 2012, Muslow's salary was $148,899 as a full time employee (an increase from $119,118.96).[4] Muslow's salary later increased to $161,049 and, effective November 1, 2015, she received an additional equity raise to $182,475.[5]

---

[1] Appellants' references to the Audit Report in their Brief are entirely irrelevant and unrelated to Appellants' gender discrimination and retaliation claims, which the district court recognized when determining that the Audit Report was not a sufficient reason to re-open discovery as the Appellants previously requested. ROA.4889-4890.

[2] ROA.10545.

[3] ROA.10568-10569.

[4] ROA.10552-10553.

[5] ROA.10552-10553.

On May 9, 2014, Cunningham received an offer by Muslow, her director supervisor, to join LSUHSC as a Staff Attorney.[6] She began working at forty percent full time equivalent with a salary of $51,000 (an annualized salary of $127,500).[7] On January 4, 2016, Cunningham increased her equivalent full time percentage from forty percent to sixty percent and her salary increased accordingly to $76,500.[8]

### b. The Market Study

In 2017, Human Resources Management ("HRM") at LSUHSC performed a market study.[9] The market study was performed in order to update and maintain a comprehensive compensation program to attract and retain talent at LSUHSC.[10] Initially, LSUHSC had a 23-step pay grade structure in place, which was expanded to a 30-step pay grade structure by HRM as a result of the market to accommodate changes in market pricing over time.[11] Each *position* (not the employee who held the position) was assigned a pay grade and each pay grade was assigned a minimum, midpoint,

---

[6] ROA.10578, 10581-10582.

[7] ROA.10578, 10580-10581.

[8] ROA.10579.

[9] ROA.10598, 10609.

[10] ROA.10596-10597, 10609.

[11] ROA.10610-10611.

and maximum salary ranges.[12]  Muslow's position was assigned a pay grade

of N43.[13]  Cunningham's position was assigned a pay grade of N37.

Ultimately, in order to address market equity disparities, the market

study recommended that employees who fell below the minimum of their pay

grade and range should be adjusted to at least the minimum of the new

assigned range.[14] An exception to this recommendation to adjust employees to

at least the minimum of the new assigned range would be if an employee has

been performing below expectations.[15]  HRM also recommended that the

following factors be considered for any equity adjustments as a result of the

market study: budget, the employee's current positioning with respect to the

market range given his/her skills, abilities, knowledge, and performance, the

employee's performance and demonstrated accomplishments, and equity and

salary relationships to substantially equivalent incumbents within the

employee's work unit or division.[16]

---

[12]ROA.9922-10056, 10599-10600, 10603-10604, 10808-10809.

[13] ROA.10558.

[14] ROA.10613.

[15] ROA.10613.

[16] ROA.10614.

### c. Muslow's Compensation Post-Market Study

On July 21, 2017, Hollier sent correspondence to then-President of LSU F. King Alexander requesting approval of the market study's proposed 30-step pay grade structure.[17]   In addition, Hollier requested approval for salary adjustments for the following positions: Director, Information Services (Leslie Capo), Staff Attorney (Muslow), and Dean, School of Medicine (Steve Nelson, M.D.).[18] Approval from the President was required for certain percentages of a salary increase.[19] Hollier sought a 17.53% increase for Capo, a 16.44% increase for Muslow, and a 16.07% increase for Nelson.[20] Specific to Muslow, he requested that her salary be increased from $182,475 to $212,475.[21] The market study provided the following ranges the assigned pay grade for Muslow's position: $227,520 (minimum); $315,166 (midpoint); $402,711 (maximum).[22]

On July 31, 2017, Hollier sent email correspondence to Muslow, stating, "Finally some improvement in compensation!" and confirmed that

---

[17] ROA.10616-10617.

[18] ROA.10616-10617.

[19] ROA.10623-10624.

[20] ROA.10616-10617.

[21] ROA.10616-10617.

[22] ROA.9922-9941, 10808.

she was receiving a salary increase to $212,475.[23]  Hollier explained that his supportive statement was in response to Muslow expressing frustration following the market study due to her salary falling below the minimum amount assessed for her position.[24]

The $212,475 salary was below the minimum of the N43 pay grade's salary range. In order to raise Muslow to the minimum of her pay grade ($227,520), the percent increase would have been over 20%. Hollier explained that he previously had a problem with requesting salary increases over 20% from President Alexander who had requested that he implement these higher salary increases in stages.[25] Hollier also did not attempt to initially recommend the entire increase to the minimum of Muslow's paygrade in July 2017 because of Muslow's unsatisfactory job performance.[26] Specifically, Muslow was unresponsive, Hollier received complaints from the deans of LSUHSC about her unresponsiveness, she was unwilling to put

---

[23] ROA.10554, 10636-10638.

[24] ROA.10631.

[25] ROA.10625-10626, 10630.

[26] ROA.10626, 10628.

decisions in writing, and Hollier was unhappy about legal advice Muslow provided that resulted in a lawsuit against LSUHSC.[27]

It should be noted that Hollier was not the only individual who complained about Muslow's performance as General Counsel at LSUHSC. Hollier identified the following individuals who had previously complained to him regarding Muslow: Nelson, Demetrius Porche (Dean, School of Nursing), and Ben Lousteau (Associated Dean of Fiscal Affairs, School of Medicine).[28] Nelson confirmed Hollier's testimony that he complained to Hollier about Muslow, agreeing that Muslow was reluctant to put decisions in writing and frequently did not respond a timely manner.[29] Nelson also stated that he communicated these matters to Harman.[30] Consistent with Hollier and Nelson's experiences, Harman testified that he likewise found Muslow to be unresponsive, stating that she did not return emails or responses would take an inordinate amount of time to receive.[31] He recalled hearing complaints

---

[27] ROA.10627-10628.
[28] ROA.10629.
[29] ROA.10728-10729.
[30] ROA.10728-10729.
[31] ROA.10724-10725.

about her from Nelson as well as Lousteau regarding her performance.[32] In addition, Martin (who is no longer employed by LSUHSC) corroborated Hollier's testimony that performance issues were an issue in determining the extent Muslow's pay raise following the market study, testifying that when she inquired about Muslow's salary adjustment, she was told by Dr. Joseph Moerschbaecher (d) (Vice Chancellor of Academic Affairs at the time) that Muslow had some performance issues.[33]

After receiving her salary increase to $212,475, Muslow met with Hollier and complained about the amount of the salary increase, indicating that she believed she should receive a greater increase to at least the pay grade's minimum salary amount.[34] Following their meeting, Hollier agreed to retroactively increase her salary to $227,520 effective July 1, 2017.[35]

### d. Cunningham's Compensation Post-Market Study

The market study provided the following salary ranges for Cunningham's position in the N37 pay grade: $119,736 (minimum); $182,242

---

[32] ROA.10727.
[33] ROA.10601.
[34] ROA.10602, 10605.
[35] ROA.10554-10556, 10638.

(midpoint); $204,748 (maximum).[36] The market study's recommendations for market-based equity increases did not include part-time employees of LSUHSC (less than 75% full time equivalent).[37] As such, Cunningham as a 60% full time equivalent, or part-time employee, was not eligible for an increase. It should be noted, however, that Cunningham annualized salary, which totaled $127,500, fell above the minimum of her N37 pay grade's range.

### e. Consolidation to the Office of General Counsel

On July 20, 2018, Skinner informed Hollier (and the Chancellor of the Shreveport LSU Health Sciences Center) that they "are ready to launch the integration of [Health Science Centers] legal functions into the Office of General Counsel" and that the revised Permanent Memorandum-72 ("PM-72") "serve as the launch point."[38] PM-72 provides a policy for the provision of legal services for the LSU system.[39] Behind the scenes, President Alexander wanted a centralized general counsel's office for the university system in order to reduce outsourcing work to outside counsel and minimize

---

[36] ROA.9922-9941, 10808.

[37] ROA.10606-10607.

[38] ROA.10639-10642, 10652.

[39] ROA.10663-10665.

inconsistent advice being given by counsel who are separate from the Office of General Counsel ("OGC") (e.g. Muslow).[40] On August 6, 2018, Donna Dewailly, Business Manager for LSU's OGC first contacted Edward Jones (Shreveport General Counsel) regarding the consolidation to the OGC and requested some information of the Shreveport Health Sciences Center's Legal Affairs Department.[41] This email correspondence was forwarded by Jones to Muslow, who contacted Hollier about the email chain on the same date.[42] Hollier explained that Skinner wants to centralize the flow of legal work so that it is coordinated through Baton Rouge.[43] Muslow then forwarded the email chain to Cunningham on August 7, 2018. Muslow and Cunningham were aware of the discussion to consolidate their positions to the OGC as early as August 2018.

On November 29, 2018, Skinner contacted Hollier to inform him that the now-revised PM-72 would be effective on January 1, 2019 and, in turn, they would like to move counsel from LSUHSC to the OGC at that time.[44]

---

[40] ROA.10648-10652.

[41] ROA.10639-10642, 10652.

[42] ROA.10639-10642.

[43] ROA.10639-10642.

[44] ROA.10668-10669.

Skinner inquired whether he spoke to Muslow about the consolidation to the OGC and Hollier responded that he told her "that all legal services were being coordinated through Skinner's office" but did not have a timeline to provide when he initially informed her.[45] Hollier indicated that he would inform Muslow regarding the January 1, 2019 date.[46] PM-72 was completed as of December 10, 2018.[47]

On December 19, 2018, Skinner contacted Muslow welcoming her formally to the OGC and explained that all LSU legal resources would be consolidated under one organization, that they will transition her to the OGC administratively after January 1, 2019, she will have a new title of Chief Counsel of LSUHSC, and will be receiving the same compensation.[48] On December 20, 2018, Muslow sent email correspondence to Cunningham that they will be meeting with Skinner and Jones on January 8, 2019 in Baton Rouge.[49]

---

[45] ROA.10668-10669.

[46] ROA.10668-10669.

[47] ROA.10663-10664, 10670-10673.

[48] ROA.10674-10675.

[49] ROA.10666, 10676.

On January 18, 2019, Dewailly contacted Muslow and Cunningham regarding the transfer of their positions to the OGC and explained that in order to set her up in their (main campus Baton Rouge) Human Resources system, she will need to complete an application, provide a resume and transcript, and complete an employment contract to be forwarded.[50]  On January 22, 2019 Dewailly provided Muslow and Cunningham with links to applications for their OGC positions.[51]

On January 22, 2019, Dewailly forwarded Muslow and Cunningham their employment contracts for their signature.[52]  Muslow's contract provided that her appointment as Chief Counsel under the OGC would be effective February 1, 2019 and provided a salary of $227,520, the same amount she was already being paid with LSUHSC.[53] Cunningham's contract provided that her appointment as Staff Attorney under the OGC would be effective February 1, 2019 and provided a salary of $76,500 (at 60% effort), the same amount she was already being paid with LSUHSC.[54] Muslow and

---

[50] ROA.10677-10679.

[51] ROA.10680-10682.

[52] ROA.10683-10685.

[53] ROA.10686-10687.

[54] ROA.10688-10689.

Cunningham completed their applications for their positions on January 30, 2019.[55] However, the February 1, 2019 effective date passed and they never executed their employment contracts.[56]

On February 15, 2019, past their contracts' effective date, Muslow sent correspondence to Skinner (Hollier was not included in this correspondence) stating that she and Cunningham would not execute their contracts until their salaries be "revisited", citing to, among other reasons, the market study and attempting to compare herself to other LSUHSC employees (male and female).[57] Overall, Muslow proposed a salary of $375,000 for herself (a $147,500 increase) and a salary of $204,748 with an increase to 80% full-time equivalent for Cunningham (a $128,248 increase).[58]

On February 18, 2019, Skinner rescinded Muslow and Cunningham's employment contracts due to the passage of the effective date.[59] In addition, Skinner testified that the salary being requested by Muslow and Cunningham was significantly higher than what was offered and well outside of the salary

---

[55] ROA.10690-10691.
[56] ROA.10655-10657.
[57] ROA.10692-10693.
[58] ROA.10692-10693
[59] ROA.10694-10697.

ranges that the LSU Human Resources ("HR") Department assessed for the positions (the recommendation was between $156,000 and $188,000).[60] Muslow's salary with LSUHSC exceeded the range developed by LSU HR but Skinner was willing to accommodate the amount to make the transition as seamless as possible.[61]   Notably, the $375,000 requested by Muslow was greater than Deputy General Counsel Jones whose salary was $255,000 *and* General Counsel of the LSU System Skinner whose salary was $339,000, both of whom would have been her supervisors had she remained with the OGC.

On March 1, 2019, Muslow emailed Skinner and Hollier, stating that she and Cunningham are on board with the transition to the OGC, but requested that their salaries be reviewed before signing the contracts that have now been rescinded.[62]   Muslow acknowledged that Hollier had not been involved in their OGC application process.[63] On March 1, 2019, Skinner provided a summary of the events that had transpired with Muslow and Cunningham to Hollier and stated that the plan is for the existing LSUHSC

---

[60] ROA.10653-10654, 10667, 10708-10710.

[61] ROA.10653-10654.

[62] ROA.10698.

[63] ROA.10698.

counsel positions to be retired on June 30, 2019 and for new positions to be created in OGC.[64] He further indicated that the OGC will be advertising for the counsel positions that will be assigned to LSUHSC and Muslow and Cunningham are welcome to apply for the jobs.[65] Hollier confirmed understanding of Skinner's directive, agreeing to retire the LSUHSC legal positions by June 30, 2019 in accordance with the revised PM-72.[66]

Hollier signed correspondence addressed to Muslow and Cunningham dated March 25, 2019 reiterating what was previously advised to them – that their positions will be eliminated effective June 30, 2019, new positions located within the OGC will be advertised and filled, and they are welcome to apply.[67] He did not draft the correspondence himself.[68] Plaintiffs filed Charges of Discrimination on March 26, 2019, alleging gender discrimination and retaliation, and allege they provided notice of the filing of the Charges with the EEOC to Defendants on March 28, 2019.[69] Without any evidence, Plaintiffs allege that Hollier backdated the March 25, 2019 correspondence

---

[64] ROA.10699-10701.
[65] ROA.10699-10701.
[66] ROA.10699-10701.
[67] ROA.10704-10705.
[68] ROA.10633.
[69] ROA.654-696, 1341-1357.

because the envelopes containing the correspondence were postmarked on March 29, 2019.[70] Hollier disputed this allegation in his deposition testimony, providing a reasonable explanation that the letter could have been delayed in the mailroom, vehemently denying that he backdated the letter to be dated prior to the date of the Charges of Discrimination and reiterating that Muslow and Cunningham were well aware that their positions with LSUHSC were being eliminated prior to the filing of their Charges.[71]

On April 4, 2019, Dewailly contacted both Muslow and Cunningham to provide them the link to the now-advertised counsel positions.[72] They voluntarily opted not to apply.[73] On June 25, 2019, Hollier sent correspondence to Muslow extending the termination of her position to July 15, 2019 so as not to affect her retirement ability.[74] Following the termination of Muslow and Cunningham's positions, the OGC hired Louis Colletta to fill the Chief Counsel position for LSUHSC with an annual salary of $182,500 –

---

[70] ROA.682, 1347.

[71] ROA.10634-10635.

[72] ROA.10702-10703.

[73] ROA.10658-10659.

[74] ROA.10706.

a male employed in the same position Muslow was offered and who was paid

significantly less than Muslow.[75]

**Procedural History**

Following multiple amendments to their Complaint and multiple

Motions to Dismiss filed by Defendants, the following claims remained

against Hollier when he filed his Motion for Summary Judgment: (1) gender

discrimination in violation of the Equal Pay Act ("EPA") (also asserted

against LSU, Skinner, and Harman); (2) retaliation in violation of the EPA

(also asserted against LSU, Skinner, and Jones); and (3) gender

discrimination in violation of the Fourteenth Amendment pursuant to Section

1983 (also asserted against Harman). The other Defendants-Appellees also

filed Motions for Summary Judgment. The district court granted Defendants-

Appellees' respective Motions, dismissing the entirety of Plaintiffs-

Appellants' claims against them with prejudice.

Following the district court's ruling, both Plaintiffs filed unwarranted

Motions for Reconsideration in which they attempted to assert legal theories,

evidence, and arguments that were available to them when they filed their

Opposition Memoranda (but failed to include by their own volition). These

---

[75] ROA.10736-10737.

Motions were also denied by the district court and Plaintiffs-Appellants' appeal to this Court followed.

## SUMMARY OF THE ARGUMENT

Following the completion of extensive discovery in this matter, Appellants' claims were proven to be entirely unfounded against Hollier, warranting summary judgment. Appellants are unable to support retaliation and discrimination claims under the EPA nor are they able to establish gender discrimination under Section 1983 against Hollier.

In response to Hollier's Motion for Summary Judgment, Plaintiffs filed an Opposition with arguments that are largely unsupported, without references to any exhibits or evidence.[76] Unsubstantiated assertions are not competent summary judgment evidence.[77] The party opposing summary judgment is *required* to identify *specific* evidence in the record and to articulate the precise manner in which that evidence supports the claim.[78] The district court does not have a duty to sift through the record in search of evidence to

---

[76] ROA.11796-11819.

[77] *Cardoso-Gonzalez v. Anadarko Petroleum Corp.*, 326 F. Supp. 3d 273, 280 (E.D. La. 2018).

[78] *Id.*

support a party's opposition to summary judgment.[79] Plaintiffs' unsubstantiated statements made in their Opposition entirely failed to satisfy their burden to provide competent evidence in support of their arguments and failed to show the existence of any genuine issues on the challenged essential elements of their claims.[80] This Court should not consider Appellants' additional or new arguments or referenced evidence contained in their Brief that they failed to present to the district court for its consideration in ruling on Hollier's Motion for Summary Judgment.

The district court's decision on Hollier's Motion for Summary Judgment, based on the evidence presented by the parties, is well-supported by the law and evidence presented in this matter and Appellants fail to establish that the district court erred in granting Hollier's Motion. As such, this Court should affirm the district court's judgment, which dismissed the entirety of Appellants' claims against Hollier.

---

[79] *Id.*

[80] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *see also Taita Chem. Co. v. Westlake Tyrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1995) (*en banc*).

---

# ARGUMENT

---

Defendant-Appellee, Larry Hollier, submits that the district court's ruling on his Motion for Summary Judgment dismissing Plaintiffs-Appellants claims with prejudice be affirmed on the following grounds:

## I.    Standard of Review

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[81] The moving party's burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case.[82] Once the moving party demonstrates the absence of a genuine dispute as to facts material to a determinative element, the non-movant must then provide competent evidence that sets forth specific facts in support of his claim and which shows the existence of a genuine issue on the challenged

---

[81]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[82]  *Celotex*, 477.U.S. at 321-322; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

essential elements.[83]

Because a genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party, the non-movant cannot defeat summary judgment with conclusive allegations, unsubstantiated assertions, or a mere scintilla of evidence.[84]  Where critical evidence is "so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant, then summary judgment should be granted.[85]" Therefore, if the non-movant fails to produce sufficient evidence on even one of the essential elements of the claims to which he would bear the burden of proof at trial, he cannot prevail and summary judgment must be granted.

Courts of Appeal review summary judgments under a de novo standard of review applying the same criteria as the district court.[86] Although the record is reviewed *de novo*, this Court has made it clear that it will not consider evidence or arguments that were not presented to the district court

---

[83] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *see also Taita Chem. Co. v. Westlake Tyrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1995) (*en banc*).

[84] *Ware v. Sun Life Assur. Co. of Canada*, No. CIV.A. 08-1571, 2009 WL 1011109, at *2 (W.D. La. Apr. 15, 2009).

[85] *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 (5th Cir. 1995).

[86] *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 477 (5th Cir. 2002).

for its consideration in ruling on the motion for summary judgment.[87]

## II.    The district court properly dismissed Appellants' EPA retaliation claims against Hollier.

Appellants next baselessly argue that the district court erred in granting summary judgment on their EPA retaliation claims. In their Brief, Appellants predominately focus on the decision to rescind their employment contracts following Muslow's February 15, 2019 email correspondence to Skinner complaining of alleged salary inequities among male and female employees and requesting higher salaries for herself and Cunningham. Appellants do not argue that Hollier retaliated against them with respect to the contract rescissions and there have been no allegations or evidence presented to the district court that Hollier was involved in these actions.

Appellants further briefly allude to their filing of EEOC Charges, wrongly stating that this "independently establishes a prima facie case of retaliation." To establish a prima facie case of retaliation under the EPA, a plaintiff must demonstrate that (1) she engaged in protected activity; (2) she experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment

---

[87] *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310 (5th Cir. 2017); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 (5th Cir. 1992).

action.[88] If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.[89] After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive.[90]

Hollier does not dispute that the filing an EEOC Charge alone would constitute protected activity recognized under the law. However, Muslow and Cunningham have failed to establish any causal link between the filing of their EEOC Charges of Discrimination and the correspondence sent by Hollier terminating their positions dated March 25, 2019. A "causal link" is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity

---

[88] *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021) (stating that a claim for retaliation under the EPA is analyzed under the same *McDonnell* Douglas burden-shifting framework as retaliation claims under Title VII are analyzed); *See also Wilder v. Stephen F. Austin State Univ.*, No. 9:20-CV-00040-ZJH, 2021 WL 3288303, at *14 (E.D. Tex. Aug. 2, 2021).

[89] *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.,* 730 F.3d 450, 454 (5th Cir. 2013).

[90] *LeMaire v. Louisiana,* 480 F.3d 383, 388–89 (5th Cir.2007); *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013).

such as where the plaintiff shows that the employment decision and her protected activity were not wholly unrelated.[91]

Initially in their Complaints, Appellants outrageously accused Hollier, without any evidence, of "backdating" the March 25, 2019 correspondence terminating their positions because the envelope was postmarked on March 29, 2019 – after they filed their Charges.[92] They further contended, without any evidence, that Hollier sent the correspondence because they sought a salary review and equal treatment for themselves and other female employees. Cunningham admitted in her deposition that she simply believes the letter was backdated due to the postmark date but she has no other evidence to support this contention.[93] Muslow similarly testified that it is her position that the letter was backdated, but could not remember from where she obtained this baseless information and testified that her only basis for this serious allegation was the postmarked date.[94]

Hollier disputed this allegation in his deposition testimony, providing a reasonable and legitimate, non-discriminatory explanation that the letter could

---

[91] *Miles-Hickman v. David Powers Homes, Inc.,* 589 F. Supp. 2d 849, 869 (S.D. Tex. 2008).

[92] ROA.682, 1347.

[93] ROA.10586.

[94] ROA.10561-10562.

have been delayed in the mailroom and strongly denied that he backdated the letter to be dated prior to the date of the EEOC Charges.[95] Appellants have never established that Hollier backdated these letters to terminate their positions as a result of any complaints or the EEOC Charges.

More significantly, it is entirely unreasonable for Appellants to suggest that their positions were terminated as a result of their EEOC Charges and request for their salary review from the OGC when they were notified as early as August 2018 regarding the discussions to consolidate their positions to the OGC.[96] Muslow was then contacted on December 19, 2018 by Skinner welcoming her formally to the OGC and explained that all LSU legal resources would be consolidated under one organization, that they will transition her to the OGC administratively after January 1, 2019.[97] Both Muslow and Cunningham received links to applications and their employment contracts on January 22, 2019.[98] On March 1, 2019, both Muslow and Cunningham received email correspondence from Hollier confirming that their LSUHSC positions will be retired effective June 30, 2019 per Skinner's

---

[95] ROA.10634-10635.

[96] ROA.10639-10642, 10652.

[97] ROA.10674-10675.

[98] ROA.10680-10685.

directive also sent on March 1, 2019.[99] All of these actions occurred *prior to the filing of Plaintiffs' EEOC Charges*.

The evidence presented establishes that both Muslow and Cunningham were well-aware that their positions with LSUHSC were being eliminated and their new positions would fall under the OGC's purview *prior* to the filing of their EEOC Charges and prior to their request for a salary review (an email that Muslow sent to Skinner, not Hollier). Plaintiffs' decisions not to execute their employment contracts or apply for their positions once the positions were posted to the public were their own.

Not only is it Hollier's position that Appellants are unable to establish a prima facie claim of retaliation against him, Hollier sufficiently set forth evidence of a legitimate, non-discriminatory reason, as addressed above, regarding the decision to terminate Appellants' positions with LSUHSC in compliance with the OGC's decision and PM-72 which occurred *prior* to any complaints related to pay or discrimination.

Further, Appellants, as the district court held, failed to meet their burden to establish pretext. Notably, Appellants did not reference any exhibits or evidence to refute the arguments and evidence set forth by Hollier with

---

[99] ROA.10698.

respect to their retaliation claims in their Opposition to Hollier's Motion for Summary Judgment.[100] Their unsubstantiated arguments presented to the district court were wholly insufficient to satisfy their burden to provide competent evidence in support of their claim. Hollier's legitimate, non-discriminatory reasons for terminating Plaintiffs' position with LSUHSC and both Plaintiffs' lack of evidence supporting pretext further justified the granting of summary judgment in Hollier's favor. The district court properly applied the law and evidence in dismissing Appellants' EPA retaliation claim against Hollier.

**III.    The district court properly dismissed Appellants' Section 1983 claim for gender discrimination set forth against Hollier.**

In their Brief, Appellants collectively address their Section 1983 claims asserted against Hollier and Harman and their Title VII claim asserted against LSU for gender discrimination. To establish a Section 1983 claim asserting a violation of the Fourteenth Amendment's Equal Protection Clause, a plaintiff must prove that she has been treated differently due to her membership in a protected class *and* that the unequal treatment stemmed from discriminatory

---

[100] ROA.11816.

intent.[101] A gender discrimination claim brought pursuant to Section 1983 is a parallel cause of action to a Title VII claim.[102] Since only the Section 1983 claim has been and can be asserted against Hollier, Appellee will focus its arguments on the Section 1983 claim's elements. Both elements will be addressed in turn:

### 1. Appellants failed to identify similar-situated employees to support their gender discrimination claims.

To refute Hollier's (and the other Defendants') Motion for Summary Judgment, Appellants were required to establish that that they were treated less favorably than other similarly situated employees outside of their protected group, which required them to show that they were treated less favorably than others under nearly identical circumstances.[103] Since Section 1983 claims mirror Title VII claims, Hollier adopts and incorporates herein all arguments, evidence, and exhibits set forth by LSU's Brief. Further, Hollier also

---

[101] *Monumental Task Comm., Inc. v. Foxx*, 2016 WL 5780194, at *3 (E.D. La. Oct. 3, 2016) (citing *Mills v. City of Bogalusa*, 112 F. Supp. 3d 512, 516 (5th Cir. 2015)).

[102] *Lauderdale v. Texas Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007); *Stark v. Univ. of S. Mississippi*, 8 F. Supp. 3d 825, 844 (S.D. Miss. 2014).

[103] *Davis v. Matagorda Cty.*, No. 3:18-CV-00188, 2019 WL 1015341, at *8 (S.D. Tex. Mar. 4, 2019), report and recommendation adopted, No. 3:18-CV-00188, 2019 WL 1367560 (S.D. Tex. Mar. 26, 2019)

incorporates the additional arguments addressing Appellants' EPA discrimination claims below to likewise apply to the Section herein.

The district court extensively and thoroughly reviewed the multiple comparators proffered by both Muslow and Cunningham as evidenced by its Order and Reasons and correctly concluded that neither of them offered proper comparators as a matter of law.[104] Further, despite Appellants' arguments otherwise, the district court applied the appropriate legal analysis in setting forth and applying the criteria of what this Court considers a sufficient comparator to support a Title VII (and Section 1983) claim.[105]

**Muslow's Comparators.** Muslow identified ten comparators by name in her attempted support of her claim, which were comprehensively addressed by Hollier, LSU, and the district court.[106] These ten male employees are the following: Bernard (Ben) Lousteau, Brent Herold, John Ball, Matt Altier, Edwin Murray, Richard Buhler, Jimmy Cairo, Demetrius Porche, Louis Colletta, and Timothy Fair.[107] It should first be noted that several of the purported "comparators" initially identified by Muslow and addressed at the

---

[104] ROA. 14313-14336.

[105] ROA.14312-14313.

[106] ROA.9790-9800, 10497-10507, 14314-14329.

[107] ROA.10738-10772.

summary judgment stage were male employees who were actually paid *less* than her, which, as the district court recognized, are inappropriate comparators.[108] For this reason, the district court found the following individuals cannot be sufficient comparators for Muslow: Bernard (Ben) Lousteau, Brent Herold, John Ball, Matt Altier, Richard Buhler, and Louis Colletta (as former OGC chief counsel at LSUHSC).[109]

Although Appellants disagree with the district court's reasoning in finding the aforementioned individuals were inappropriate comparators, Appellants ignore the fact that the district court specifically acknowledged (1) Buhler earned less than even the lowest salary Muslow earned prior to her pay raise and (2) Appellants failed to rebut Defendants' arguments regarding their non-comparator status in their Opposition memoranda.[110] The district court did not err when Appellants' failure to address arguments and evidence in response to the Defendants' motions left the district court with nothing to review in opposition regarding this issue.

This Court defines a "similarly situated" employee as an employee outside of the plaintiff's protected class who was treated more favorably

---

[108] ROA.14314.

[109] ROA.14314.

[110] ROA.14315.

under nearly identical circumstances and requires this comparator-employee

to hold the same job or hold the same job responsibilities as the Title VII

claimant.[111] Applying this same analysis, the district court properly concluded

that the remaining four employees named by Muslow, Edwin Murray, Jimmy

Cairo, Demetruis Porche, and Timothy Fair, were inappropriate comparators

because they were not similarly situated.[112] The district court extensively

reviewed each of their respective job duties, responsibilities, and required

credentials for the aforementioned positions in comparison to the job duties,

responsibilities, and required credentials for Muslow's position support of its

conclusion. Appellants' Brief does not specifically address how these

individuals' duties and responsibilities are similarly situated to Muslow's

duties and responsibilities to overcome the district court's analysis.

Further, Muslow also claimed that deans, vice chancellors, and

assistant vice chancellors were her comparators, but did not identify these

individuals by name.[113] Nevertheless, the district court went out of its way to

review all potential comparators of Muslow by reviewing several of these

individuals addressed by LSU and Hollier in this respective motions (Keith

---

[111] *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017).

[112] ROA.14315.

[113] ROA.14321.

Schroth, Steve Nelson, Henry Gremillion, and Dean Smith).[114] As the district court noted, Muslow did not rebut Defendants' arguments regarding these individuals in her Opposition memoranda; thus, should be precluded from now asserting arguments that they are similarly situated because these arguments were not presented to the district court when it ruled on the Defendants' motions.[115]

**Cunningham's Comparators.** Cunningham initially proffered eleven male employees who she contended are comparators as listed by the district court in its Order and Reasons.[116] The entirety of the list of individuals is unnecessary for this Court's consideration because Cunningham only addressed two of the of these comparators in her Opposition memorandum: Richard Buhler and Frank Wasser.[117] These are also the only individuals addressed in Appellants' Brief.

The district court applied the same, correct legal standard set forth above and likewise performed a thorough review of the duties, responsibilities, and credentials of these individuals compared to the duties,

---

[114] ROA.14321-14329.

[115] ROA.14321.

[116] ROA.14329.

[117] ROA.14330.

responsibilities, and credentials for Cunningham's position.[118] As supported by the job descriptions submitted into evidence by the Defendants, neither Buhler nor Wasser's duties and responsibilities are similar to Cunningham's at the time she was employed.[119] The district court properly determined through its well-supported decision that these individuals were not sufficient comparators.

In addition, Appellants argue that district court further erred when it "ignored" the Market Study which, they, contend, "answers the 'comparator' question." However, the district court squarely addressed this issue in its Order and Reasons, noting that the Plaintiffs argued that the Market Study established comparators on its face because it grouped employees with similar skill, experience, education, and duties together by "N" numbers.[120] In response, the district court noted even if Muslow was correct, the other individual in Muslow's pay grade, N43, was another female who received higher pay (Wendy Simoneaux and not a comparator). There was no evidence presented by Appellants to the district court that all employees within the same pay grade or job family met the criteria to be considered comparators

---

[118] ROA.14329-14336.

[119] ROA.14329-14336.

[120] ROA.14327-14329.

who are similarly situated within the meaning of Title VII (or a comparator within the meaning of the EPA). When opposing Hollier's Motion for Summary Judgment, Appellants failed to establish that they were treated differently than any similarly situated male counterparts and the district court's dismissal was warranted as a result.

**2. Appellants did not address the element of discriminatory intent by Hollier.**

In his Motion for Summary Judgment, Hollier also addressed the inability of Muslow and Cunningham to establish the second element of their Section 1983 claim: discriminatory intent by Hollier. In addition, Hollier is entitled to qualified immunity for this claim. In its Order and Reasons, the district court noted that dismissal of Plaintiffs' Section 1983 claim is warranted for their failure to identify comparators and pretext (Hollier's arguments regarding pretext are addressed further below).[121] The district court also pointed out that regarding these arguments, the Plaintiffs relied upon "unsupported conclusions regarding genuine issues of material fact, intentional discrimination, and qualified immunity" in their Opposition.[122]

---

[121] ROA.14310.

[122] ROA.14310.

Appellants did not address any arguments regarding any alleged discriminatory intent by Hollier nor did they address Hollier's assertion that he is entitled to qualified immunity. Since Appellants have not raised these arguments on appeal, they are considered waived by this Court.[123] Hollier submits that even if this Court determines that Appellants have sufficiently established that there are similarly situated (or substantially similarly in effort, skill, and responsibility) male employees who were treated more favorably than them, neither Muslow nor Cunningham can establish discriminatory intent by Hollier. Further, Hollier submits that he is entitled to qualified immunity for this claim. In support of these arguments, Hollier adopts the arguments and evidence relied upon in its Motion for Summary Judgment which remain unrefuted by Appellants.[124]

## IV.    The district court properly dismissed Appellants' gender discrimination claim asserted under the Equal Pay Act against Hollier.

The district court correctly applied the law and evidence in its Order and Reasons when it concluded that Plaintiffs are unable to establish discrimination claims under the EPA.  With respect to Hollier, the district

---

[123] *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 926 (5th Cir. 2008); *United States v. Ogle*, 415 F.3d 382, 383 (5th Cir. 2005).

[124] ROA.10517-10522, 13854-13863.

court did not err in determining that Appellants are unable to establish a prima facie claim because Hollier is not considered an "employer" as a matter of law and Plaintiffs failed to identify viable comparators to support their claims. The district court further properly held that the Defendants satisfied their burden by establishing nondiscriminatory reasons for the alleged pay disparities (which were never sufficiently refuted by Appellants).

### 1. The district court correctly held that Hollier was not considered Plaintiffs' "employer" for purposes of their claims against him.

Only those who are considered "employers" may face potential liability under the EPA.[125] This Court applies an economic reality test to determine whether an individual is considered an employer for purposes of the EPA.[126] Under this test, the court considers whether the alleged employer: (1) possessed the power to hire and fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee records.[127]

---

[125] *See Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 251 (5th Cir. 2012).

[126] *Id.*

[127] *Id.*

**Power to Hire and Fire.** As to Cunningham, Muslow hired Cunningham for the Staff Attorney position on May 9, 2014.[128] Hollier does not dispute that he eliminated Appellants' positions (as directed by OGC) effective June 30, 2019. He did not have the authority to hire or fire either of them for the OGC-consolidated positions.[129] In their Opposition to Hollier's Motion for Summary Judgment, Appellants only vaguely addressed Hollier's alleged ability to fire them, but did not address his ability to hire the Appellants.[130] Using the evidence presented by Appellants before the district court, the district court properly determined that Appellants did not satisfy the first prong of this test, which requires a showing that Hollier had the ability to *both* hire *and* fire them.[131]

**Supervision or Control.** As to Cunningham, Muslow was Cunningham's supervisor.[132] Muslow supervised or controlled Cunningham's work schedule and conditions of employment – if Cunningham required a day off, she testified that she would inform Muslow and Muslow directed her daily legal

---

[128] ROA.10578, 10581-10582, 10707.

[129] ROA.10677-10679, 10694-10697.

[130] ROA.11815, 14364.

[131] ROA.14364.

[132] ROA.10548, 10581-10582.

duties in her position as Staff Attorney at LSUHSC (not Hollier).[133] As to both Appellants for the OGC-consolidation period, Hollier would not have been in control of Muslow and Cunningham's work with the OGC.[134] Skinner would have direct supervising responsibility over the consolidated OGC positions.[135]    Appellants did not refute this factor through any supporting evidence.[136]

**Determination of pay.** Regarding Cunningham's pay, Muslow provided Cunningham with her offer letter containing her salary.[137] However, Muslow also testified that she did not determine Cunningham's salary; HRM set the salary (not Hollier).[138] As to both Appellants, Hollier did not establish or have control over Muslow and Cunningham's rate of pay with respect to the offer extended by the OGC because the OGC provided Muslow and Cunningham with employment contracts with stated salary amounts.[139] When Muslow and Cunningham had an issue with the salary offered in the contracts, they

---

[133] ROA.14364-14365.
[134] ROA.10648-10652.
[135] ROA.10650.
[136] ROA.14365.
[137] ROA.10707.
[138] ROA.10547, 10566.
[139] ROA.10683-10685.

contacted Skinner (not Hollier); thus, Appellants were clearly aware that Hollier was not able to set their salary with the OGC.[140] In their Opposition, Appellants likewise failed to cite any record evidence to refute this factor.[141]

**Maintenance of Records.** Cunningham testified that her employment records while she employed by LSUHSC were maintained by HRM (not Hollier).[142] Further, Hollier did not maintain any employment records in relation to the OGC application process and consolidation. As shown above, all contact with Muslow and Cunningham regarding their applications, employment contracts, and rescission of their contracts was through the OGC.

Appellants' contention that there are factual issues as to Hollier's employer status is unfounded, particularly when the Appellants themselves failed to offer any supporting evidence in their Opposition to attempt to create genuine disputes regarding the aforementioned factors.[143] As such, the district court properly dismissed Appellants' EPA claims against Hollier for gender discrimination.

---

[140] ROA.10692-10693.

[141] ROA.14366.

[142] ROA.14366.

[143] ROA.11814-11815.

**2. The district court properly determined that Appellants failed to establish proper comparators to support a prima facie claim under the EPA.**

Even if this Court finds that there are genuine factual disputes as to Hollier's "employer" status, Appellants have not identified proper comparators that would support a prima facie discrimination claim.[144] To establish a prima facie case under the Equal Pay Act, Muslow and Cunningham each must prove that: (1) Hollier is subject to the EPA as an employer (addressed above); (2) they performed work in a position requiring equal skill, effort, and responsibility under similar working conditions as an employee of the opposite sex; and (3) they were paid less than the employee of the opposite sex.[145] As the district court acknowledged, a Title VII wage discrimination claim parallels that of an EPA claim; thus, the district court held, Plaintiffs cannot establish a prima facie case for the same reasons that their Title VII claim fails.[146] Since Appellants failed to establish viable comparators, as addressed in Section III above, they likewise fail to support an EPA discrimination claim against Hollier.

---

[144] ROA.14367.

[145] *Phillips v. TXC Corp.*, 194 F. App'x 221, 224 n. 5 (5th Cir. 2006).

[146] ROA.14368-14369.

40

### 3. Hollier met his burden in establishing affirmative defenses under the EPA and Appellants did not set forth any evidence of pretext by Hollier.

If Plaintiffs make a prima facie showing, the burden shifts to Hollier to demonstrate that differential pay was justified under (i) a seniority system; (ii) a merit system; (iii) a system which measures earning by quantity or quality of production; or (iv) a differential based on any other factor other than sex.[147] Appellants argue that the burden shift should stay with the Defendants at this juncture and the district court erred in finding that they were required to show pretext in response. However, this Court has stated, in the context of an EPA discrimination claim: "If an employer responds with legitimate, non-discriminatory reasons for an alleged pay disparity, the plaintiff must then show that the purported reason is a pretext for discrimination."[148]

Despite the fact that Appellants failed to (1) establish that Hollier is an employer under the EPA and (2) establish their prima facie burden of proof, the district court still addressed the remaining elements of their claims in its

---

[147] 29 U.S.C. §206(d)(1); *Boudreaux v. Stranco Field Servs., LLC*, No. CV 18-5569, 2019 WL 2142045, at *8 (E.D. La. May 16, 2019) (citing *Reznick v. Associated Orthopedics & Sports Med., P.A.*, 104 F. App'x 387, 390, n.4 (5th Cir. 2004)).

[148] *Browning v. Sw. Rsch. Inst.*, 288 F. App'x 170, 174 (5th Cir. 2008) (citing *Plemer v. Parsons–Gilbane,* 713 F.2d 1127, 1137 n. 8 (5th Cir.1983)).

comprehensive opinion, finding that (1) the Defendants met their burden to offer persuasive non-discriminatory reasons for alleged pay disparities and (2) Plaintiffs cannot establish pretext presented for these reasons.[149]

Hollier has demonstrated that any alleged differential pay was justified under a seniority system, a merit system, a system which measures earning by quantity or quality of production, or a differential based on any other factor other than sex. The market study itself showed that both male and female employees were being paid less than the minimum of their assigned pay grades.[150]

The positions that were reviewed in connection with the market study were assigned to pay grades by solely considering the position, not the individual; there was no opportunity for gender-based considerations (whether for positive or nefarious reasons) for established pay ranges.[151] Further, the recommendations following the completion of the market study was likewise unrelated to gender – HRM recommended that in order to address market equity disparities (not gender equity disparities) that employees who fell below the minimum of their assigned pay grade's range

---

[149] ROA.14369-14371.
[150] ROA.9922-9941, 10808.
[151] ROA.10599-10600, 10603-10604.

should be adjusted to at least the minimum of the range. Appellants' attempt to use this gender-blind market study as evidence of discrimination has no factual support. The district court agreed, correctly finding that the Defendants asserted multiple valid defenses including a bona fide non-gender-based job classification program that does not discriminate on the basis of sex.[152]

It is important to emphasize that Muslow was ultimately raised to the minimum of her pay grade's salary range following the market study ($227,520).[153] Initially, she received a raise from $182,475 to $212,475.[154] As Hollier testified, he did not initially recommend the entire increase (1) because then-President of LSU requested that Hollier enact raises over 20% in stages and (2) due to Muslow's unsatisfactory job performance, as corroborated by Rosalynn Martin, John Harman, and Steve Nelson (all additional legitimate, non-discriminatory reasons).[155] Specifically, Harman criticized Muslow's performance independent of Hollier.[156] Nelson's affidavit

---

[152] ROA.14370.

[153] ROA.10480-10481.

[154] ROA.10480-10481.

[155] ROA.10481-10481.

[156] ROA.10724-10727.

further reinforces this opinion held by several in LSUHSC leadership.[157] In addition, Martin testified that she recalls employment issues being cited at the time of Muslow's initial salary increase – disproving Plaintiffs' arguments that Hollier (and, by their logic, Harman and Nelson) somehow concocted this story only after the lawsuit was filed.[158]

Muslow had the opportunity to obtain and present countervailing testimony in her Opposition to Hollier's Motion for Summary Judgment regarding her performance issues that she continues to dispute in her Brief but chose not to do so. Ultimately, Muslow's pay raise (along with other females and males who also received a raise) following the market study was a result of correcting gender-neutral, market-based inequities. Muslow did not point to any evidence that these reasons set forth by Hollier were pretext for gender discrimination and she does not establish that the district court committed any error in making the same determination.[159]

In responding to the proffered reasons by Defendants, Appellants are required to raise a genuine issue of material fact through record evidence as to whether the specific reason is pretextual – the Plaintiffs failed to meet this

---

[157] ROA.10728-10729.
[158] ROA.10591-10607.
[159] ROA.14371.

burden in their Opposition.[160] This Court cannot consider Appellants' belated attempt to provide updated arguments and references to the record when they failed to do so before the district court. As the district court concluded, Plaintiffs never disputed that the pay grades were established by a gender-neutral process and offered no evidence to show the establish reasons for any pay differential (the gender-blind market study) was based on sex.[161] The district court properly dismissed Appellants' EPA gender discrimination claims against Hollier.

## V.    Appellants' request for reassignment if this matter is remanded should be denied.

As set forth above, the district court's comprehensive decision that was well-supported by the law and evidence should be affirmed by this Court. However, in the event that this Court reverses the district court's decision, this Court should not reassign this matter to another judge. The Fifth Circuit has acknowledged its ability to reassign cases, but has stated that reassignment is an "extraordinary" remedy that should be done "infrequently and with great reluctance."[162]

---

[160] ROA.11796-11819, 14371.

[161] ROA.14371.

[162] *Pulse Network, L.L.C. v. Visa, Inc.*, 30 F.4th 480, 495 (5th Cir. 2022).

This Court considers the following factors to assess whether to reassign a case: (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his mind or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.[163]

For example, in *Pulse Network, L.L.C.* (an anti-trust case), this Court found reassignment was warranted when there were statements made on the record by the judge that revealed his disdain for antitrust law and antitrust plaintiffs, prevented the plaintiff from taking any discovery from the defendant, and issued conclusory opinions with little-to-no citations to record evidence or legal authority.[164] In contrast, the reasons set forth by Appellants in their Brief merely highlight Appellants' dissatisfaction with the district court's decisions, many of which were a result of their own actions and inactions (e.g. disobeying a court order warranting sanctions), as opposed to

---

[163] *Id.*

[164] *Id.* at 496.

any evidence of actual bias against them.

The record reflects that the district court has been fair and impartial towards all parties and rendered a thorough, 84-page decision on the Defendants' Motions for Summary Judgment supported by legal authorities and record evidence. The district court rendered another comprehensive, 30-page decision following Appellants' unsupported Motions for Reconsideration. Requiring another judge to undertake this case and get up to speed on this matter at this late juncture, which involves a record consisting of over 16,000 pages, would be a waste of judicial resources. Appellants' request for reassignment should be denied if the Court decides to reverse the district court's decision.

---

## CONCLUSION

---

For the reasons stated herein and in Larry Hollier's Memoranda in Support of its Motion for Summary Judgment filed with the district court, Larry Hollier respectfully requests that the Court affirm the district court's judgment, dismissing the entirety of Plaintiffs-Appellants' claims against him with prejudice.

Respectfully submitted:

**JEFF LANDRY**
**ATTORNEY GENERAL**

By:  */s/ Amanda M. Plaiscia_____*
Craig R. Watson, #29473 (T.A.)
Guice A. Giambrone, III, #25062
Amanda M. Plaiscia, #35962
Blue Williams, L.L.C.
Special Assistant Attorneys General
3421 N. Causeway Blvd., Suite 900
Metairie, Louisiana 70002
Telephone: 504-831-4091
Fascimile: 504 849-3875
Email: cwatson@bluewilliams.com
Email: ggiambrone@bluewilliams.com
Email: aplaiscia@bluewilliams.com
*Attorneys    for    Defendant-Appellee*
*Larry Hollier*

---

## CERTIFICATE OF SERVICE

---

I, Amanda M. Plaiscia, hereby certify, that a copy of the foregoing brief was served upon all counsel of record on January 17, 2023 by e-filing same into the CM/ECF system, which will automatically deliver a copy of same to all counsel.

By: */s/Amanda M. Plaiscia*_____
Amanda M. Plaiscia, #35962

## CERTIFICATE OF COMPLIANCE

Pursuant to 5ᵀᴴ CIR. R. 32.2 and 3, the undersigned certifies the following:

1.  This brief complies with the type-volume limitations of FED. R. APP. P. 32 (a)(7)(B) because:
    a.  This brief contains 9,736 total words.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because:
    a.  This brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point font, Times New Roman style.

3.  The undersigned counsel understands that a material misrepresentation in the certificate of compliance may result in striking the brief and in sanctions against the person signing the brief.

By: */s/Amanda M. Plaiscia*_____
Amanda M. Plaiscia, #35962